**DIVERSIFOODS, INC., Plaintiff,**

v.

**DIVERSIFOODS, INC., Defendant.**

No. 84 C 3437.

United States District Court,
N.D. Illinois, E.D.

July 27, 1984.

Eugene F. Friedman, Chicago, Ill., for plaintiff.

Seymour Rothstein, George B. Newitt, Allegretti, Newitt, Witcoff & McAndrews, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This case is before the court on the plaintiff's motion to recuse. The motion is based on the fact that Judge Getzendanner's husband, Stanton A. Kessler, is a member of the firm of Mayer, Brown & Platt and the firm, although not of record in this case, presently represents the defendant in other matters, and, prior to the filing of this lawsuit, had some connection with the events underlying this litigation.[1] For the reasons stated, the motion is denied.

On January 27, 1984, plaintiff's counsel, Eugene F. Friedman, wrote a letter to the defendant complaining of the fact that the defendant had begun to use the same corporate name as plaintiff's, "Diversifoods, Inc." No response was received. On February 27, 1984, another letter was sent, this time to the attention of Charles J. Averbook, the in-house general counsel of the defendant. Averbook responded and informed Friedman that the matter was being turned over to the defendant's outside trademark counsel, Allegretti, Newitt, Witcoff & McAndrews. After waiting several weeks, Friedman called the Allegretti firm and spoke to Denis Berntsen. Berntsen indicated that he had the matter but had not yet acted on it. After several more phone calls, Berntsen told Friedman that Percy Angelo of Mayer, Brown & Platt would handle the matter.

Friedman then called Angelo and was told that she had written to him in response to his demand that the defendant cease using the name Diversifoods and that, should he have any further questions, he should contact her. Angelo's letter of March 21, 1984, stated that because the parties were in different businesses and the defendant did not use its corporate name as a trademark, "we do not agree

---

1. Judge Getzendanner was an attorney at Mayer, Brown & Platt during the period 1968 through December 1, 1980, and became a partner in December of 1974. On December 2, 1980, she began serving as a United States District Judge. In February of 1983, she married Stanton A. Kessler, a renowned international tax lawyer at Mayer, Brown & Platt.

with your assertion that there is a likelihood of confusion between [the parties]."

On April 20, 1984, Friedman filed the complaint in this action and the case was assigned to Judge Getzendanner. At that time, Friedman knew that Judge Getzendanner formerly had been a partner at Mayer, Brown & Platt, and, apparently anticipating that Mayer, Brown & Platt would be representing the defendant in the litigation, he called Judge Getzendanner's chambers regarding the court's recusal policy on Mayer, Brown & Platt matters. Plaintiff's motion states that Friedman was told "that Judge Getzendanner had the absolute policy of always recusing herself from any case in which her prior law firm had a role." [2] (Emergency Motion to Recuse at 4).

However, Mayer, Brown & Platt did not appear for the defendant. At the first court appearance on April 27, 1984, George Newitt and Seymour Rothstein of the Allegretti firm appeared for the defendant. Nothing was said by Friedman or the defendant's lawyers about Mayer, Brown & Platt's prior connection with the underlying controversy or its present representation of the defendant in any matter.

The plaintiff attempts to portray as mysterious the defendant's move from the Allegretti firm to Mayer, Brown & Platt, and back to Allegretti. The decisions to employ the various attorneys were made by Averbook. Averbook has been deposed and his affidavit has been filed. In his affidavit Averbook states that after the lawsuit was filed, he promptly contacted Rothstein and engaged the Allegretti firm to represent the defendant in the litigation. Averbook also states that he employs numerous lawyers in Chicago and other parts of the country to handle matters for the defendant. He hires outside lawyers based on his perception of their skill and experience in a particular kind of matter. Those lawyers, and the matters being handled for the defendant, are described in the affidavit. It clearly appears that Mayer, Brown & Platt is one of many firms presently representing the defendant. At his deposition, Averbook stated that Mayer, Brown & Platt "represents us generally in general corporate matters." In his affidavit, Averbook states:

> When we have a franchise litigation problem in Chicago, or if I am concerned that a particular lawsuit outside of Chicago may be a case of major corporate implication, I turn to Lee Abrams at Mayer, Brown & Platt. I also call Mr. Abrams on occasion when we have an unusual situation that I am not sure what to do with.

Averbook explains in his affidavit that when the defendant received Friedman's first letter, Averbook thought of the case as a trademark case and talked to George Newitt about it. However, he did not formally employ Newitt. When the second letter from Friedman was received, Averbook states: "I decided to mention the matter to Lee Abrams at Mayer, Brown & Platt, since, on reflection, I was not sure this was really a trademark case, but rather a 'corporate name' case." When the complaint was received, Averbook concluded that it was a classic trademark case and he decided to employ the Allegretti firm as litigation counsel.

Averbook states that at the time he made the decision, he did not know of Judge Getzendanner's connection with Mayer, Brown & Platt. The defendant was not a client of Mayer, Brown & Platt when Judge Getzendanner was at the firm. He also notes his prior relationships with the lawyers from the Allegretti firm. George Newitt had represented Chart House, now a division of the defendant, for fifteen

---

**2.** This is not a complete statement of the court's policy. The court recuses herself in cases in which Mayer, Brown & Platt is of record, or in which a Mayer, Brown & Platt client is a party, the firm is not of record, but the client is a material client of the firm, or Kessler has a material attorney/client relationship with the client. Judge Getzendanner also recuses herself in matters involving Mayer, Brown & Platt clients where the firm is not of record but where she had a close personal attorney/client relationship with the client while at Mayer, Brown & Platt.

years in trademark matters, and, when Averbook was general counsel for STP Corporation, Seymour Rothstein handled STP's trademark matters. On this record, Averbook's decision with respect to counsel had nothing to do with the fact that the case had been assigned to this court.

At the first court appearance in the case on April 27, 1984, the plaintiff presented its motion for temporary restraining order and preliminary injunction to prevent the defendant from using the name "Diversifoods" at a convention in Las Vegas which was to begin May 17, 1984. The court set the hearing for May 16, 1984 and ordered expedited discovery. The court also scheduled a pre-hearing conference in chambers on May 11, 1984. At that conference the court concluded, on the basis of the available facts, the defendant's adoption of the name "Diversifoods, Inc.—The Restaurant Company," and the parties' inability to conclude the necessary discovery before the scheduled hearing, that no hearing on the motion for preliminary injunction was necessary and that the defendant could attend the convention in Las Vegas. It was also agreed that a hearing most probably would never be necessary because once discovery was concluded, the facts very likely would be undisputed and cross-motions for summary judgment would dispose of the case. The parties were instructed to continue the expedited discovery and to file cross-motions for summary judgment as soon as possible.

Neither during the May 11th conference, nor at any prior time, was there any mention to the court of Mayer, Brown & Platt's prior connection with this controversy and no mention of the fact that Mayer, Brown & Platt at any time represented the defendant. Friedman's failure to discuss Mayer, Brown & Platt's role is surprising because, according to his motion, Friedman had been told that Judge Getzendanner's policy was to recuse in any matter in which Mayer, Brown & Platt "had a role." Also, Fried-

man obviously thought that Averbook's decision to hire the Allegretti firm instead of Mayer, Brown & Platt was important because Friedman had examined Averbook at his deposition on May 4th on his decision to switch law firms after the case was filed. Based on these facts, it would appear that Friedman's silence was deliberate.

On Monday, May 14, 1984, the first business day following the May 11th conference, Friedman filed a "Notice of Emergency Motion and Emergency Motion to Recuse the Honorable Susan Getzendanner." The motion was presented on May 14, 1984 to the Emergency Judge who merely entered and continued it before Judge Getzendanner on May 17. (The Judicial Conference was held in Indianapolis May 14–16 and the parties knew Judge Getzendanner planned to attend.) The motion was based solely on Judge Getzendanner's former partnership relationship with Mayer, Brown & Platt and the firm's connection with the underlying controversy through Angelo's letter to Friedman. There was no mention in the motion of Stanton A. Kessler and his marital relationship to Judge Getzendanner.

On May 17, the motion was presented to Judge Getzendanner and the defendant opposed it on the ground that it was filed long after the facts recited in the motion were known to Friedman and just after the court had ruled unfavorably to the plaintiff on the motion for preliminary injunction. Friedman then orally stated that he was now also relying on the fact that Judge Getzendanner was married to a partner at Mayer, Brown & Platt, a fact which he claimed he had discovered on May 15, 1984, when he read the court's Financial Disclosure Report. The Report had been filed with the Clerk of the Court on May 14, 1984.[3] Friedman stated that prior to reading the Report he did not know that Judge Getzendanner was married to a partner at Mayer, Brown & Platt. Although this claim is doubted by the defendant's law-

---

**3.** This was the first Financial Disclosure Report filed by the court which contained information concerning Kessler since it was the first such Report filed by Judge Getzendanner since her marriage to Kessler.

yers, because Friedman was at the 1984 Patent Lawyers' Judicial Dinner at which Judge Getzendanner and Kessler were introduced (in a somewhat funny and memorable way), the court accepts Friedman's representation that he had no prior knowledge of Kessler's relationship with Mayer, Brown & Platt.

The parties have now briefed the motion to recuse. The plaintiff begins by stating that the motion "in no way attacks or should receive any interpretation or implication as questioning the honor and integrity of this court." (Memorandum in Support of Emergency Motion at 1). Instead, the plaintiff asserts that under the facts there is an appearance of impropriety.

Disqualification of the court is governed by 28 U.S.C. § 455, which provides, in pertinent part, as follows:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

\* \* \* \* \* \*

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

Thus, Judge Getzendanner must disqualify herself in any proceeding in which her impartiality might reasonably be questioned (§ 455(a)), where her spouse is acting as a lawyer in the proceeding (§ 455(b)(5)(ii)), or where her spouse has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding (§ 455(b)(4) and (b)(5)(iii)). "Proceeding" is defined as including "pretrial, trial, appellate review, or other stages of litigation." (§ 455(d)(1)).

**Acting as a Lawyer in the Proceeding.**

■ Neither Kessler nor Mayer, Brown & Platt is acting as a lawyer in the proceeding. Kessler personally has done nothing in connection with this litigation or Percy Angelo's letter to Friedman. Angelo's letter to Friedman, sent prior to the filing of the complaint, does not constitute acting as a lawyer in the proceeding. The letter was sent before the proceeding began. Mayer, Brown & Platt has had no connection with the proceeding since it was commenced by the plaintiff. The defendant has been represented by other counsel during all phases of this proceeding.

There is a clear Seventh Circuit precedent, not cited by plaintiff in its memorandum in support of its emergency motion to disqualify, that governs the question of whether Kessler or Mayer, Brown & Platt was acting as a lawyer in the proceedings. In *Groves & Sons v. International Brotherhood of Teamsters*, 581 F.2d 1241 (7th Cir.1978), the court held that recusal was not necessary on the following facts: The judge's brother was a senior partner in a law firm which was counsel of record for the plaintiffs at the early stages of the proceeding. The law firm withdrew before

any substantive actions were taken in the litigation. The court concluded that the law firm was not acting as a lawyer in the proceeding. The judge's brother had not personally appeared in the litigation and had not actively participated in the litigation, so it was clear that he was not acting as a lawyer in the proceeding. Under *Groves,* there is no doubt that neither Kessler nor Mayer, Brown & Platt is acting as a lawyer in this proceeding.

None of the cases cited by plaintiff support recusal under § 455(b)(5)(ii). In *SCA Services, Inc. v. Morgan,* 557 F.2d 110 (7th Cir.1977), the judge's brother's law firm (same as in *Groves* ) was acting as a lawyer in the proceeding in that the firm was of record for and was representing one of the parties. The court concluded that the judge should recuse himself even though the brother had not personally appeared in the case because the brother's firm was of record in the case. Here, Mayer, Brown & Platt has not appeared of record and is not acting as a lawyer in the proceeding. In *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1259 (5th Cir.1983), the judge's relative had not filed a formal appearance in the case but he was actively participating in the discovery proceedings in the case. There the court held that recusal was required because the judge's relative was acting as a lawyer in the proceedings. Here, neither Kessler nor Mayer, Brown & Platt is actively participating in the litigation.

**Financial or other Substantial Interest in the Proceeding or the Defendant.**

 The Seventh Circuit considered § 455(b)(4) and § 455(b)(5)(iii) in *Groves &*

*Sons v. International Brotherhood of Teamsters, supra,* in which the judge's brother's law firm had withdrawn from representing the plaintiffs in the proceeding. The Court found that neither the brother nor the law firm had any interest whatsoever which could have been substantially affected by the outcome of the proceedings. The Court noted that all financial obligations between the law firm and the plaintiffs had been fully settled prior to judgment; no financial interest was contingent on the outcome of the litigation; and no substantial nonpecuniary interest of the firm, such as good will or firm reputation, was maintained by the firm in the litigation. The Court did not consider the question of whether a law firm's representation of a client in other matters constituted a financial or other substantial interest in the proceeding or the defendant.

Neither Kessler nor Mayer, Brown & Platt has a financial interest (as that term is defined in § 455(d)(4)) in the subject matter of this litigation (rightful use of the name "Diversifoods") or in the defendant. That leaves the question of whether Kessler or his law firm has any other interest that could be substantially affected by the outcome of the proceeding. Certainly if the defendant was a material client for Mayer, Brown & Platt, or a material client for Kessler, a judge should consider recusal under this standard. If either of these factors were present, Judge Getzendanner, consistent with her existing policy, would recuse herself in the litigation.[4] However, the plaintiff does not suggest that defendant is a material client of Mayer, Brown & Platt or that Kessler has a material attorney/client relationship with the defendant.

---

4. For example, since her marriage to Kessler, Judge Getzendanner has recused herself in matters involving the Continental Illinois National Bank and Trust Company of Chicago as a principal, regardless of whether Mayer, Brown & Platt is acting as a lawyer in the proceeding, because Kessler has a material attorney/client relationship with the Bank and the Bank is a material client of Mayer, Brown & Platt. Prior to her marriage, Judge Getzendanner had a policy of recusing herself in matters involving Continental Bank's Trust Department, even when Mayer, Brown & Platt was not of record, and she did so because of her close relationship with the Trust Department during her years of practice at Mayer, Brown & Platt. It was as a result of her marriage to a partner at Mayer, Brown & Platt that Judge Getzendanner expanded her recusal policy regarding Mayer, Brown & Platt clients when the firm is not of record in the proceeding.

The plaintiff essentially is arguing that the defendant does not have to be a material client of Mayer, Brown & Platt or of Kessler, but just a client of the firm. It is suggested that law firms are interested in as many clients as they can get, that Mayer, Brown & Platt would like to keep the defendant as a client, and that if the defendant loses this lawsuit, it will take its legal business elsewhere. This argument reads the requirement of a substantial effect out of the statute. If Mayer, Brown & Platt were to lose the defendant as a client—for whatever reason—there could only be a substantial effect on Mayer, Brown & Platt if some substantial pecuniary or nonpecuniary interest of the firm was affected. The loss of a non-material client, by definition, would not affect substantially most law firms. Mayer, Brown & Platt is one of the largest law firms in the country and it has hundreds of clients. Obviously, some of those clients are material. Although the defendant is a large company, Mayer, Brown & Platt is not its only outside lawyer and it is not a material client to the firm. The loss of any client would not adversely affect the firm's reputation and good will. Many clients have come and gone in the history of all of the major firms in Chicago and the reputation and good will of those firms has not been affected substantially. Accordingly, the loss of the defendant as a client would not affect a substantial pecuniary or nonpecuniary interest of Mayer, Brown & Platt.

Moreover, it is utter speculation—not in accord with common sense—that a negative outcome in this litigation would affect the relationship between Mayer, Brown & Platt and the defendant. Averbook is a sophisticated general counsel of a large company. According to his testimony, he makes decisions regarding employing lawyers throughout the country based on his perception of their strengths and abilities. Obviously, Averbook knows that it would be improper for the court to be influenced by the defendant's relationship with Mayer, Brown & Platt, and he reasonably could not be expected to be resentful of Mayer, Brown & Platt or think less of Lee Abrams at the firm if the defendant should lose this case. It is not reasonable to conclude, as plaintiff does, that the outcome of the proceeding adversely would affect Mayer, Brown & Platt's relationship with the defendant.

On the basis of the record, Mayer, Brown & Platt does not have an interest which would be substantially affected by the outcome of this litigation simply as a result of its representation of the defendant in other matters.

**Appearance of Impropriety.**

■ To establish the appearance of impropriety, the plaintiff relies on *Hoke v. Charlotte-Mecklenburg Hospital Authority, Inc.,* 550 F.Supp. 1276 (W.D.N.C.1982). In that case the judge disqualified himself under the appearance of impropriety standard because his son had represented the defendant in another court in a separate contract action which had been concluded two years earlier. Even the judge had trouble seeing the problem, and he recused himself under some greater standard than that set forth in the statute. He described his decision as that of a judge "leaning over backwards to avoid the possible appearance of unfairness to others, and to be sure that there is no lack of perceived impartiality in this forum." 550 F.Supp. at 1277–78. Moreover, the judge was sitting in a small city, Charlotte, North Carolina, and the litigation involved many persons well known to the judge and the litigants. The judge noted that "many of the people who are listed as witnesses for the defendants, or were participants in the actions about which Dr. Hoke complains, are friends or former clients of mine or have provided treatment, including surgery, for me and members of my immediate family." 550 F.Supp. at 1277. Some might agree that under all of these circumstances there was an appearance of impropriety. Those circumstances are not present in this case.

The plaintiff argues next that the public "may reasonably conclude that the failure

[of Mayer, Brown & Platt] to file a formal appearance merely constitutes an artifice to avoid having the judge effect recusation because of ... her connection with a member of the firm." (Memo in support of Emergency Motion at 6). This argument presumes that it would be improper for a litigant to choose litigation counsel in order to either force or avoid recusation by a particular judge. It is not improper and no appearance of impropriety exists.[5] In *Groves*, the plaintiff hired new litigation counsel after the case was assigned to Judge Morgan, most likely to avoid the Judge's recusal. The Court of Appeals did not find any appearance of impropriety in *Groves*. *Groves* is strong support for the conclusion that there is no appearance of impropriety in this case.

### Timeliness of the Motion.

The defendant complains that the plaintiff's motion to recuse was made only after the hearing on the motion for preliminary injunction was stricken, in other words, after the plaintiff sustained a loss, and that the plaintiff is merely forum shopping.

At the time the case was filed, Friedman was aware of the court's former partnership relationship with Mayer, Brown & Platt and, according to Friedman, he had been told by Judge Getzendanner's secretary that the court's policy was to recuse herself in any matter in which Mayer, Brown & Platt "had a role." Having been told this, Friedman obviously should have raised the Mayer, Brown & Platt relationship at the outset of the case. If he had, the court's relationship to Kessler would also have been discussed. Very likely, Friedman would not have filed a motion to recuse. Friedman moved to recuse only after his client had lost an important mo-

tion, and he originally moved only on the basis of the information he had when the suit was filed, that is the fact that Judge Getzendanner was a former partner of Mayer, Brown & Platt. The new fact, Judge Getzendanner's marriage to a Mayer, Brown & Platt partner, was learned by Friedman only *after* the motion to recuse was filed. Thus, the plaintiff's motivation in moving to recuse the court was the loss of the preliminary injunction motion and not any concern about appearances.

The Court of Appeals in *Groves* noted the importance of the court making early determinations of recusals under § 455. This court reviews all complaints within a week of filing in order to enter appropriate recusals, and Mayer, Brown & Platt regularly informs the court's Minute Clerk when any Mayer, Brown & Platt lawyer files an appearance in any pending case so that a recusal may be entered promptly by the court. In cases involving Mayer, Brown & Platt clients which are not known to the court and which are not represented by the firm in the lawsuit, the court must rely on counsel to bring the Mayer, Brown & Platt connection to her attention. In this case the court did not know that the defendant was a Mayer, Brown & Platt client and neither of the parties raised the relationship at an early stage. This is unfortunate.

### Convenience to the Court.

The plaintiff's memorandum in support of its motion to recuse has a section entitled "Convenience to the Court." It is based on certain statements made by the court when the motion to recuse was presented. Judge Getzendanner expressed concern that if she had to recuse herself in every proceeding involving a Mayer, Brown

---

**5.** In this case, the defendant's selection of trial counsel had nothing to do with Judge Getzendanner's relationship with Mayer, Brown & Platt. Averbook was not aware of the relationship when he hired trial counsel. However, if the fact that a litigant chose trial counsel with the intention of preventing a recusal was grounds for a motion to recuse, litigants could then have the right to inquire into the reasons

why their opponents selected one law firm over another, in order to test whether grounds for recusal were present. There would be an unbearable intrusion into the attorney/client relationship. The defendant in this case volunteered information on this issue in order to respond to plaintiff's accusations of impropriety. It was not required.

& Platt client, even when Mayer, Brown & Platt is not of record, she would be out of the judicial business. While that was an overstatement, the effect of such a recusal rule on Judge Getzendanner's docket would be very substantial. Mayer, Brown & Platt represents many large businesses, educational and financial institutions, public utilities, and governmental entities, which have many matters in this court in which Mayer, Brown & Platt is not of record. When Judge Getzendanner was a partner at that firm, it represented the City of Chicago and the State of Illinois, but certainly it was not of record in every litigation matter involving the State or the City. If that were true today, and it very well may be true, and the recusal rule urged by the plaintiff were in effect, Judge Getzendanner's docket obviously would be affected substantially by recusals in all litigation involving the City and the State. This is only one example.

It is because of the substantial effect which a broad recusal policy would have on Judge Getzendanner's calendar that the court has not "leaned over backwards" as did the judge in *Hoke v. Charlotte-Mecklenburg Hospital Authority, Inc., supra.* But the motion to recuse is denied on the merits, not because the result is more convenient to the court.

**ORDER**

Accordingly, the plaintiff's emergency motion to recuse is denied. It is so ordered.