226 F.Supp.2d 552 (2002)
In re MERCEDES-BENZ ANTITRUST LITIGATION.
Mercedes-Benz USA, Inc., Plaintiff/Counter-claim Defendant,
v.
Coast Automotive Group, Ltd. and Tamim Shansab, Defendants/Counterclaimants/Third Party Plaintiffs,
v.
David Michael Motor Cars Corp., Ray Catena Motor Cars Corp. and Contemporary Motorcars, Inc., Third. Party Defendants.
No. 99-CIV-4311
No. CIV. 99-3121.
United States District Court, D. New Jersey.
May 1, 2002.
James J. Shrager, Norris, McLaughlin & Marcus, Somerville, NJ, for James Shrager, Special Master.
Michael S. Waters, Carpenter, Bennett & Morrissey, Newark, NJ, for Mercedes-Benz USA, Inc., plaintiff.
Richard Samuel Mazawey, Law Offices of Richard Mazawey, Clifton, NJ, William T. Connell, Dwyer, Connell & Lisbona, Fairfield, NJ, Robert C. Chaplin, Pollock, Montgomery & Chapin, P.C., Bedminster, NJ, Martin G. Margolis, Margolis, Meshulam, Pobereskin & Knaub, P.C., Verona, NJ, Richard M. Pescatore, Vineland, NJ, Peter A. Efros, Efros & Wopaty, Red Bank, NJ, for Defendants.

MEMORANDUM OPINION
WOLIN, District Judge.
This matter is opened before the Court upon its own Order to Show Cause dated April 10, 2002, why the Court should not recuse itself from further proceedings in the above-captioned matters. The Court has received a number of written submissions *553 from the parties in response to its Order to Show Cause. Counsel for the putative plaintiffs' class and defendants/counterclaim plaintiffs Coast Automotive have appeared in opposition to recusal. Mercedes-Benz USA has taken no position. The only parties to have appeared in support of recusal belong to the so-called "independent dealers group," defendants Prestige Motors, Globe Motor Car, Country Imported Car, and David Michael Motors Cars.

BACKGROUND
This matter has been pending before the Court for approximately three years. Following a substantial delay during which plaintiffs re-pled their complaint and the Court entertained two motions to dismiss, the Court assumed direct control of case management from the United States Magistrate Judge. A number of case management devices were put into place, as reflected in the Orders posted upon the web site of the Court. Among these were the establishment of lead and liaison counsel, a committee for the independent dealers, a special master, a document depository and an expedited schedule for discovery and briefing of a motion to certify the matter as a class action.
At the beginning of his lawsuit, the Court notified counsel that its son, Marc E. Wolin, Esquire, was then an associate at the law firm of Carpenter Bennett and Morrissey, counsel to the national distributor Mercedes-Benz USA. No party objected to the Court's continued involvement in this matter on that ground. With this procedure, the Court was following a practice of many years duration. Indeed, the Third Circuit Court of Appeals has had the opportunity to rule on this issue where the Carpenter Bennett firm appeared before this Court, finding no abuse of discretion when the Court refused to recuse itself on the basis of Mr. Wolin's association. Sandusky v. Sodexho USA, No. 94-5655, slip op. at 6-7 (3d Cir. May 24, 1995).
The occasion of the Order to Show Cause revisiting this issue is Mr. Wolin's elevation to partner at Carpenter Bennett. The authority conceded by all parties to be primarily relevant is 28 U.S.C. § 455(b), which provides that a judge:
shall ... disqualify himself in the following circumstances:
. . . . .
(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such person:
. . . . .
(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding[.]
Obviously, Mr. Wolin is related within the prohibited circle of consanguinity to the Court and, if the condition of subsection (iii) exists, then the Court must recuse itself regardless of the preferences of the parties. Thus, the issue is whether Mr. Wolin's new status as partner in Carpenter Bennett creates "an interest that could be substantially affected by the outcome of the proceeding."
The factual context of this decision is as follows. First, the Court takes judicial notice of the fact that modern law firm economics have led to the inception of at least two types of partnership. One is the traditional equity partner, in which each member is the general agent of the others, enjoys an ownership interest in the entity, and has a share in decision making. Because the partners' interests derive from their participation as principals, successes, failures, profits and losses are born together. Of course, this interest, particularly with respect to income, will generally be proportionate to the partner's seniority, *554 capital contribution, business generation and a host of other factors as adjusted by the partnership agreement.
A second type of partnership is a newer creation, the non-equity partner. As the name suggests, the non-equity partner position lacks some of the perquisites of traditional partnership, most typically that the non-equity partner is paid a fixed salary rather than a percentage of firm profits. What other benefits the non-equity partner might have that would distinguish her or him from an associate will differ from firm to firm. Perhaps they will have some say in governance or enhanced job security. The Court understands that the point of the non-equity partnership is to introduce flexibility in large-firm management which was lacking in the old, up-or-out regime of the past. No doubt the iterations of "non-equity partnership" are as varied as the imaginations of managing partners.
Lastly, it is relevant to discuss the Carpenter Bennett firm itself and Mr. Wolin's place within it. Much information is available from public sources. With some seventy lawyers, the firm is large as New Jersey law firms go. The legal press reports that firm revenues are among the top twenty for New Jersey firms. Tim O'Brien, The New Jersey Too Twenty ..., 165 N.J.L.J. 25, 26, 27 (July 2, 2001). The firm's client list is dominated by large corporations. It is obviously stable and well-established, having been founded in 1898. In fact, in the Court's long experience in New Jersey legal profession, Carpenter Bennett has maintained a reputation for excellence that places it in the elite of our state's bar
In addition to information from public sources, the Court has made inquiry of the firm in connection with this Order to show cause. The Court asked for the following information:
1. The importance of the Mercedes-Benz matter.
2. The size of the firm.
3. The reputation of the firm in relation to the importance of the matter.
4. Total firm revenues.
5. Participation of Mr. Wolin in firm profits.
6. What bonuses are paid and how they are determined for partners in Mr. Wolin's position.
7. The effect of the outcome of the matter on the reputation of the firm.
8. Whether a fee award is possible based upon the outcome of the litigation.
9. Whether success or failure in the matter will affect the compensation to the firm.
10. Whether Mercedes-Benz USA is a material client for the firm.
The answers solicited by these questions were, in some cases, necessarily subjective and involved sensitive information. Respecting the candor and cooperation with which the Court's inquiry was met, the Court will discuss in this opinion only that information it considers material to its decision. The firm's letter will be filed under seal attached to an appropriate Order of the Court.
After roughly nine years as an associate, Mr. Wolin joined the partnership of the firm four months ago. He has had no contact with either of the above-captioned matters in the course of his practice at the firm. It appears that Mr. Wolin's new position is best characterized a non-equity partnership. His compensation does not depend on firm profits. Any bonus he might receive will not be affected by the outcome of the matter before the Court. Carpenter Bennett's fees will be calculated on a time and expense basis and is not contingent on a successful defense. Although an attorneys fee award might be *555 assessed against Mercedes-Benz USA as an element of damages,[1] a fee award in favor of this defendant seems remote.

DISCUSSION
Employment of a judge's daughter or son by a law firm appearing before the Court is not so rare that the resulting conflict of interest issues are unfamiliar to the courts. As noted, the core question is whether a related person has an interest likely to be substantially affected by the outcome of the pending matter. It appears to be settled that employment as an associate usually will not involve such an interest; the courts reason that a salaried attorney's income will not depend on the fortunes of the firm. See generally Richard E. Flamm, Judicial Disqualification: Recusal & Disqualification of Judges § 8.5.5 (1996) (collecting authorities).
The waters are murkier with respect to partners. Chief Justice Rehnquist declined to recuse himself from the case of Microsoft Corp. v. United States, 530 U.S. 1301, 121 S.Ct. 25, 147 L.Ed.2d 1048 (2000), although his son was a partner in one of the firms retained by Microsoft and had actually worked on the case (although apparently not on that branch before the Supreme Court). The Chief Justice noted that the firm billed on an hourly rate regardless of the outcome and wrote that it would be "unreasonable and speculative" to hold that the Supreme Court's decision would have an impact on his son's non-pecuniary interests on the facts presented.
The Second Circuit, in Pashaian v. Eccelston Props., Ltd., 88 F.3d 77 (2d Cir. 1996), reached a parallel conclusion. Pashaian affirmed a district judge who refused to recuse himself although his brother-in-law was a partner in a firm appearing before him. The Court of Appeals wrote: "`It would simply be unrealistic to assume ... that partners in today's law firms invariably `have an interest that could be substantially affected by the outcome of any case in which any other partner is involved." id. at 83 (emphasis in original).
Both the Microsoft and the Pashaian cases are readily distinguishable from the situation at bar. Chief Justice Rehnquist emphasized the limited number of Justices of the Supreme Court, contrasting them with the judges of lower courts who are more easily replaced if a conflict arises. Moreover, unlike here, the Chief Justices son's firm was not practicing before the Supreme Court itself. The related attorney in Pashaian was a member of Cahill, Gordon & Reindel, a far larger firm than Carpenter Bennett with over 220 lawyers. The Third Circuit most closely approached this issue in an aside in Moody v. Simmons, 858 F.2d 137, 141 n. 4 (3d Cir.1988), cert. denied, 489 U.S. 1078, 109 S.Ct. 1529, 103 L.Ed.2d 835 (1989), although the facts are not explored in that opinion. In Moody, the Court of Appeals rejected the bizarre argument that the entire Third Circuit was disqualified because Judge Mansmann's husband was a partner in a law firm appearing before it.
Yet, read together, both the Chief Justice and the Pashaian panel teach that section 455(b)(5)(iii) cannot be applied as a per se bar to firms whose partners are related to the judiciary. The fundamental question, as the emphasis in Pashaian makes clear, is whether there is a substantial interest at stake for the related attorney. 88 F.3d at 83; see also H.R.Rep. 93-1453, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 6351, 6352 (citing importance of "substantial" in related context). Whether an interest is substantial is necessarily a fact sensitive inquiry, and it *556 cannot fairly be answered by a mechanical, "no partners" application of section 455(b)(5)(iii).
Where the related partner is a non-equity partner, the question is further from the dividing line than the partners in either Microsoft or Pashaian. Clearly the most relevant issue to any substantial-interest analysis is the attorney's compensation. But, like an associate, a non-equity partner's financial stake in the outcome of the firm's cases is indirect. This Court, like Chief Justice Rehnquist, is prepared to consider non-economic interests involved with the outcome of a piece of litigation, without deciding whether legally they are encompassed by section 455(b)(5)(iii)'s "substantial interest" standard. 530 U.S. 1301, 121 S.Ct. 25. The Court is satisfied that the likelihood of any fallout for Carpenter Bennett such that the fortunes of new, non-equity partners will be "substantially" affected is far too remote to require recusal of the Court.
Indeed, it is not even clear that the parties supporting recusal would necessarily disagree. Princeton Motorsport expressly concedes that if Mr. Wolin is a non-equity partner then recusal is not necessary. Globe Motor Car cites an opinion of the Committee on Codes of Conduct[2] discussing the analogous section of the ABA Model Code of Judicial Conduct. Counsel for Globe forthrightly notes, however, that the opinion does not require recusal when the related partner is considered non-equity.
In fact, no party has cited authority for the proposition that a Court must recuse itself under section 455(b)(5)(iii) when a relative is a non-equity partner of a firm appearing before it. Indeed, such a per se rule would be anomalous in light of the line of cases, representing the more enlightened view in this Court's opinion, that even equity partners must be considered on their merits before recusal is required. Therefore, the Court finds that Section 455(b)(5)(iii) does not mandate recusal of the Court from the above-captioned matters.
This does not end the discussion, however. Section 455(a) states that a judge "shall disqualify himself in an proceeding in which his impartiality might reasonably be questioned." Whether doubts concerning impartiality are reasonable is the key point; doubts that are not fairly deemed reasonable do not warrant recusal. United States v. Dalfonso, 707 F.2d 757, 760 (3d Cir.1983) (quoting H.R.Rep. No. 1453, 93d Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 6351, 6355). The Court will, briefly, address this alternative provision.
First, it is clear that parties may waive grounds for recusal under section 455(a), in stark contrast to those grounds specified under 455(b) for which waiver is irrelevant. 28 U.S.C. § 455(e). The parties long ago waived any objection based upon Mr. Wolin's position as an associate at Carpenter Bennett. As discussed, for purposes relevant to issues of economic self-interest and conflict of interest, Mr. Wolin's status was unaffected by his elevation to partnership. The Court finds the previous waiver still applicable and effective as to any argument for recusal under section 455(a).
Even were it otherwise, the Court rejects the argument that its impartiality "might reasonably be questioned." This Court has presided over countless matters involving Carpenter Bennett in the approximately nine years since Mr. Wolin became associated with the firm. In each case, the Court engaged in the same careful, *557 written disclosure utilized in these matters. Objections have been rare and, where a party has appealed, the Court of Appeals has affirmed the Court's refusal to recuse itself. No one has suggested that the Court's supervision of this matter has been tainted to date.
Moreover, under section 455(a) other considerations come into play. The Court cannot properly overlook its very substantial investment of time and complex case management expertise in these cases. Class certification discovery is ongoing under the supervision of this Court's appointed Special Master. The resulting motion will be submitted in the summer. Meanwhile the case is years old. This is no time for the Court to abandon its post through an excessively nice sense of the proprieties. Fairness to the litigation process and to the parties weigh against recusal in this situation. Where the reasonableness of any suggestion of bias is so clearly tenuous, recusal would be error.

CONCLUSION
For the reasons set forth above, the Court will deny its own Order to Show Cause for recusal. The objections of those parties arguing that the Court should recuse itself are overruled. An appropriate Order is attached.

ORDER
In accordance with the Court's Memorandum Opinion filed herewith,
It is on this 1st day of May, 2002.
ORDERED that the Court denies its own Order to Show Cause for recusal; and it is further
ORDERED that the objections of those parties arguing that the Court should recuse itself are overruled.
NOTES
[1] The Court intends to express no view on the likelihood of even plausibility of this event beyond noting it as a hypothetical, legal possibility.
[2] The Court considers it most likely that this body is a committee of the American Bar Association, although counsel does not identify it or state to what extent the cited opinion is binding or persuasive authority for this Court.