In re MEDTRONIC, INC. SPRINT
FIDELIS LEADS PRODUCTS
LIABILITY LITIGATION.

This document relates to: All Cases.

Multidistrict Litigation No.
08–1905 (RHK/JSM).

United States District Court,
D. Minnesota.

March 9, 2009.

Daniel E. Gustafson, Gustafson Gluek, PLLC, Minneapolis, MN, Plaintiffs' lead counsel, Robert K. Shelquist, Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN, Plaintiffs' liaison counsel, Charles S. Zimmerman, Zimmerman Reed PLLP, Minneapolis, MN, chair of Plaintiffs' Steering Committee, for Plaintiffs.

George W. Soule, Jennifer K. Huelskoetter, Melissa R. Stull, Bowman and Brooke LLP, Minneapolis, MN, Kenneth S. Geller, David M. Gossett, Carl J. Summers, May-

er Brown LLP, Washington, D.C., Herbert L. Zarov, Daniel L. Ring, Stephen J. Kane, Mayer Brown LLP, Chicago, IL, Philip S. Beck, Tarek Ismail, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

 In deciding the sensitive question of whether to recuse ..., the test of impartiality is what a reasonable person, knowing and understanding all the facts and circumstances, would believe. It is for that reason that we cannot adopt a *per se* rule holding that when someone claims to see smoke, we must find that there is fire. That which is seen is sometimes merely a smokescreen. Judicial inquiry may not therefore be defined by what appears in the press. If such were the case, those litigants fortunate enough to have easy access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges. Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner's arsenal. Instead, the sensitive issue of whether a judge should be disqualified requires a careful examination of those relevant facts and circumstances to determine whether the charges reasonably bring into question a judge's impartiality.

*In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir.1988). The "relevant facts and circumstances" here concern my son, Richard H. Kyle, Jr., a shareholder at Fredrikson & Byron, P.A. ("Fredrikson"), a large Minneapolis law firm that represents the Defendant, Medtronic, in corporate matters and other litigation unrelated to the case *sub judice*. According to Plaintiffs, these facts require my recusal from this case. The Court does not agree.

## BACKGROUND

This multidistrict litigation concerns Medtronic's Sprint Fidelis defibrillator leads, which were voluntarily recalled on October 15, 2007. *See In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F.Supp.2d 1147, 1154 (D.Minn. Jan. 5, 2009). Following the recall, plaintiffs nationwide filed actions against Medtronic alleging (among other things) claims for negligence, strict products liability, fraud, and breach of express and implied warranties. On February 21, 2008, the Judicial Panel on Multidistrict Litigation consolidated 27 such actions before the Court for pretrial proceedings, pursuant to 28 U.S.C. § 1407. Hundreds of other cases were later transferred here as "tag along" actions. At present, this multidistrict litigation comprises over 700 individual cases.

Following its initial status conference in May 2008, the Court appointed lead counsel for Plaintiffs and a steering committee to direct the course of the litigation, who later filed a Master Consolidated Complaint for Individuals (the "MCC") on behalf of all individual Plaintiffs in this case. Medtronic later moved to dismiss the MCC, arguing that each of the asserted claims was preempted under federal law. The parties engaged in substantial briefing on that issue, and the Court held a nearly two-hour hearing on the Motion in December 2008. On January 5, 2009, the Court granted Medtronic's Motion and dismissed the MCC with prejudice.[1] At no point during the proceedings before the JPML,

---

1. The Court subsequently granted Plaintiffs leave to file a Motion for Leave to Amend the MCC.

at the initial status conference, in the many status conferences that followed, or in connection with the briefing and oral argument on Medtronic's Motion to Dismiss, did Plaintiffs raise the issue of my son's position at Fredrikson or the firm's representation of Medtronic in other matters.

Now, less than two months following the dismissal of the MCC but over a year after the JPML's consolidation order in this Court, Plaintiffs have moved for my recusal. According to Plaintiffs, "[a]pproximately two weeks ago, [they] discovered ... that Fredrikson ... has handled $14 billion in what it describes as 'deals' with Medtronic." (Pl. Mem. at 1.) As a result of "these strong financial interests" and "many other connections" between Medtronic and Fredrikson, including (i) several Fredrikson attorneys having previously worked for Medtronic and (ii) Fredrikson representing the company in intellectual-property litigation, counseling, and corporate work, Plaintiffs contend that there exists a presumption that I am biased due to my son's "position as a shareholder at Fredrikson." (Id. at 2.) Plaintiffs further argue that even if no such presumption exists, I must nevertheless recuse because a reasonable person would question my impartiality. (Id. at 1–2.)

## STANDARD OF REVIEW

■ Recusal in the federal courts is governed by 28 U.S.C. § 455, which contains two subsections pertinent here. Under Section 455's generalized, " 'catchall' recusal provision," *Liteky v. United States,* 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994), a judge must disqualify himself whenever his "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The second, more-specific subsection addresses a judge's personal relationships and requires recusal whenever a judge knows that a family member has "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(iii). The decision whether to grant a motion under Section 455 is committed to the Court's "sound discretion." *Moran v. Clarke,* 296 F.3d 638, 648 (8th Cir.2002) (*en banc*).

■ Judges are presumed to be impartial and, accordingly, parties seeking recusal bear "the *substantial* burden of proving otherwise." *United States v. Dehghani,* 550 F.3d 716, 721 (8th Cir.2008) (emphasis added) (internal quotation marks and citation omitted); *accord Fletcher v. Conoco Pipe Line Co.,* 323 F.3d 661, 664 (8th Cir.2003) (movant "carries a heavy burden of proof") (citation omitted). "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert,* 861 F.2d at 1312; *accord Laird v. Tatum,* 409 U.S. 824, 837, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Mem. of Rehnquist, J.); *Sw. Bell Tel. Co. v. FCC,* 153 F.3d 520, 523 (8th Cir.1998) (Mem. of Hansen, J.). Otherwise, parties could easily engage in judge shopping and "deal a serious blow to the integrity of the court system." *ADC Telecomms., Inc. v. Thomas & Betts Corp.,* Civ. No. 98–2055, 2001 WL 848559, at *1 n. 1 (D.Minn. July 25, 2001) (Frank, J.).

## ANALYSIS

### I. Section 455(b)

■ The Court begins its analysis with the more specific subsection of Section 455, Section 455(b). As noted above, Section 455(b)(5)(iii) requires a judge to recuse if his or her child[2] is known to have

---

**2.** Section 455(b)(5)(iii) also applies to any other family members "within the third degree of relationship" to a judge or his spouse.

an interest in an action that "could be substantially affected" by its outcome. Plaintiffs argue that because my son is a shareholder at Fredrikson, and because Fredrikson derives "significant" revenue from Medtronic, it necessarily follows that my son has an interest that could be affected by the outcome of this case. (Pl. Mem. at 15–17.) The argument, it seems, is predicated on the assumption that Medtronic is likely to steer its legal business elsewhere in the event the Court were to rule against it in this case. (*See id.* at 13.)

The Court cannot find any principled basis to accept this argument, particularly given the purportedly symbiotic relationship between Fredrikson and Medtronic. Indeed, Plaintiffs repeatedly note that there exists a "deep, pervasive and ongoing" relationship between the two (Pl. Mem. at 17), which is driven by the fact that several former Medtronic attorneys now work for the firm. In light of this close association, it seems particularly unlikely that *any* ruling the Court might make in this case, whether favorable or unfavorable to Medtronic, would have an impact on the quantum of business the firm receives. Simply put, the associations between Medtronic and its former lawyers, and the amount of business those associations generate for the firm, will in all probability continue to exist regardless of the outcome here.[3]

Furthermore, it is "utter speculation—not in accord with common sense—that a negative outcome in this litigation would affect the relationship between [Fredrikson] and [Medtronic]," when Medtronic is a large, multi-national company with in-house counsel who presumably know "that it would be improper for the court to be influenced by [Medtronic's] relationship with" the firm. *Diversifoods, Inc. v. Diversifoods, Inc.,* 595 F.Supp. 133, 139 (N.D.Ill.1984). Accordingly, the company "reasonably could not be expected to be resentful of [Fredrikson] or think less of ... the firm," which is not even involved in this case, if Medtronic should lose this litigation. *Id.* Simply put, it is "not reasonable" to accept Plaintiffs' argument "that the outcome of the proceeding adversely would affect [Fredrikson]'s relationship with [Medtronic]." *Id.*

At bottom, the argument Plaintiffs advance is little more than a hypothetical house of cards: my son *could* be affected *if* the Court were to rule against Medtronic, *if* Medtronic then "retaliated" by withdrawing business from Fredrikson, *if* the removal of that business were to impair my son's financial interests, and *if* that impairment were "substantial." The converse argument, which Plaintiffs also raise, is similarly conjectural: my son *could* be affected *if* the Court were to rule in favor of Medtronic, *if* Medtronic then "rewarded" Fredrikson by funneling it more business, *if* the additional business enhanced my son's financial interests, and *if* that enhancement were "substantial."[4] But Plaintiffs are required to offer proof of

**3.** One could argue that a sufficiently adverse ruling might put Medtronic out of business, thereby depriving Fredrikson of a "significant" client. Given Medtronic's sheer size, however, such an outcome is highly unlikely.

**4.** Plaintiffs baldly assert that whatever "substantially affects Medtronic ... necessarily has an effect on Fredrikson, and in turn, its shareholders." (Pl. Mem. at 14.) That contention, however, is pure hypothesis and ig-

nores the realities of modern law-firm economics. More importantly, the question is not whether this case might affect my son's interests, but rather whether it might *"substantially* affect" them. 28 U.S.C. § 455(b)(5)(iii) (emphasis added). Something that substantially affects Medtronic need not substantially affect Fredrikson—let alone my son—*ipso facto*, particularly given my son's relatively small stake in the firm's profits (*see* Koneck Aff. ¶ 16).

partiality, *Dehghani,* 550 F.3d at 721; "unsupported, irrational, or highly tenuous speculation" will not do. *Hinman v. Rogers,* 831 F.2d 937, 939 (10th Cir.1987); *accord In re Kan. Pub. Employees Ret. Sys.,* 85 F.3d 1353, 1362 (8th Cir.1996) (recusal not required where alleged interest is "too remote, speculative, [or] contingent"). For this reason, arguments like those asserted by Plaintiffs have been repeatedly rejected. *See Canino v. Barclays Bank, PLC,* No. 94 Civ. 6314, 1998 WL 7219, at *4 (S.D.N.Y. Jan. 7, 1998) ("All of the courts that have addressed this issue have held that § 455(b)(4) does not compel disqualification under these circumstances.").[5]

By way of example, *Microsoft Corp. v. United States,* 530 U.S. 1301, 121 S.Ct. 25, 147 L.Ed.2d 1048 (2000), the well-publicized antitrust case, addressed circumstances nearly identical to those here. Although *Microsoft* involved a simple denial of a petition for a writ of *certiorari,* Chief Justice Rehnquist took the unusual step of placing a statement in the United States Reports explaining why he had declined to recuse from considering that petition. He noted that Microsoft had retained Goodwin, Procter & Hoar, a Boston law firm where his son was a partner, to represent it in antitrust matters; although his son was involved in those matters, neither he nor the firm were involved in the case then pending before the Court. After analyzing both Section 455(a) and Section 455(b), Chief Justice Rehnquist determined that his recusal was not warranted, stating "it would be unreasonable and speculative to conclude that the outcome of any Microsoft proceeding in this Court would have an impact on [his son's] interests when neither he nor his law firm would have done any work on the matters here." *Id.* at 1302, 121 S.Ct. 25. In the instant case, the connection is even more attenuated than that discussed in *Microsoft*—unlike the Chief Justice's son, my son, who practices in the area of criminal defense, does not now represent, and has never previously represented, Medtronic. (Koneck Aff. ¶ 14.)

The court in *Transportes Coal Sea de Venezuela C.A. v. SMT Shipmanagement & Transport Ltd.,* No. 05 Civ. 9029, 2007 WL 62715 (S.D.N.Y. Jan. 9, 2007), reached a similar conclusion. There, the issue was whether an arbitration award should be set aside because the arbitrator's son worked for a law firm that represented one of the parties in an unrelated matter. In declining to vacate the award, the *SMT* court borrowed from the standards applicable to recusal in federal court:

> Additionally, the Court finds it significant that federal judges, who are held to a more stringent standard of impartiality, . . . are free to hear cases in which a party is represented in unrelated matters by the law firms of family members. Even under these more stringent standards, for example, a claim that a judge's spouse is a partner in a firm which represented a party appearing before the judge and that, as a result of this relationship, the judge and her husband benefitted from fees from that client describes a chain of causation too attenuated to [require recusal].

*Id.* at *10 (internal quotation marks, alterations, and citations omitted); *accord, e.g., Pashaian v. Eccelston Props., Ltd.,* 88 F.3d 77, 83 (2d Cir.1996) ("It would simply be unrealistic to assume . . . that partners in today's law firms invariably have an interest that could be substantially affected by the outcome of any case in which [a different] partner is involved."); *Canino,*

---

5. The text of Section 455(b)(4) tracks that in Section 455(b)(5)(iii) and requires recusal when a judge, his spouse, or a minor child residing with him has an "interest that could be substantially affected by the outcome of the proceeding."

1998 WL 7219, at *4 ("Nor can it be said that simply because one or more partners in [the judge's] husband's law firm represented Defendant in some matters, [her] husband possessed an interest that could be 'substantially affected' by the outcome of the proceedings.").

Plaintiffs note that the judges in *In re Digital Music Antitrust Litigation*, MDL No. 1780, 2007 WL 632762 (S.D.N.Y. Feb. 27, 2007), and *Diversifoods* declined to recuse because, *inter alia*, their family members' law firms did not receive *significant* compensation from the defendants. Plaintiffs attempt to contrast those cases with the instant one, arguing that Medtronic is a "significant" and "material" Fredrikson client. (*See infra* note 5.) In essence, Plaintiffs invite the Court to draw a bright-line rule: if a judge's child is a partner in a law firm that derives substantial revenue from a client, then the judge must recuse from all cases involving that client. The Court declines Plaintiffs' invitation. Such a hard-and-fast rule is contrary to the Eighth Circuit's admonition that a "relationship between a party and a judge's son or daughter does not *per se* necessitate a judge's disqualification. Rather, the determination of whether a conflict exists in a given situation is factually bound." *In re Kan. Pub. Employees*, 85 F.3d at 1364. Here, the facts point to a close-knit relationship between Fredrikson and Medtronic, which suggests that there will be little (if any) financial consequences to the firm—let alone to my son—no matter how Medtronic fares in this litigation.

That Medtronic might be a "significant" Fredrikson client, therefore, does not rule the day.[6]

In addition to the ostensible financial interest that my son has in this case, Plaintiffs also argue that he has other interests, "such as business relationships and reputations," that could be "substantially affected" were the Court to rule against Medtronic. (Pl. Mem. at 15.) Plaintiffs are correct that Section 455(b)(5)(iii) is not limited to purely financial interests. *See In re Kan. Pub. Employees*, 85 F.3d at 1359. But Plaintiffs fail to explain, and the Court fails to understand, how a decision for or against Medtronic here might affect his reputation when neither he, nor his firm, is counsel of record in this case. For the same reason, it is equally unclear to the Court how a decision in this case will affect his (or the firm's) "business relationships." Large law firms like Fredrikson gain and lose clients—even "material" clients—all the time, and "the reputation and good will of those firms has not been affected substantially." *Diversifoods*, 595 F.Supp. at 139. There is no reason to conclude otherwise here. At the end of the day, it is "impossible to do more than speculate that [my son] might someday reap a [non-pecuniary] benefit as an indirect result of the success of" Medtronic in this litigation. *Scott v. Metro. Health Corp.*, 234 Fed. Appx. 341, 357 (6th Cir.2007) (unpublished).

For all of these reasons, the Court finds that Plaintiffs have failed to satisfy their

---

**6.** Plaintiffs cite various articles posted on Fredrikson's website to argue that Medtronic is a "significant" and "material" client of the firm, although none of the cited website sections or articles actually uses those terms. (*See* Pl. Mem. at 5, 17 & n. 2.) Regardless, Fredrikson is a large and diverse law firm, with more than 240 lawyers in five offices spanning three countries, with a wide range of practice areas "includ[ing] banking, corporate, employment, energy, renewable energy, franchise, government relations, healthcare, intellectual property, international, litigation, real estate, securities, and tax." http://www.fredlaw.com/news/press/pr090121.html (last visited March 9, 2009). Plaintiffs' arguments notwithstanding, there is simply nothing in the record to indicate that Medtronic is Fredrikson's *raison d'etre*.

burden of demonstrating that recusal is required under 28 U.S.C. § 455(b).

## II. Section 455(a)

■■■■■ As noted above, Section 455(a) is broader than Section 455(b). Its purpose "is to promote confidence in the judiciary by avoiding even *the appearance* of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (emphasis added). Hence, in determining whether recusal under Section 455(a) is appropriate, the issue is whether a judge's impartiality might reasonably be questioned "by the average person on the street who knows all the relevant facts of a case." *Scenic Holding, LLC · v. New Bd. of Trs. of Tabernacle Missionary Baptist Church*, 506 F.3d 656, 662 (8th Cir.2007) (quoting *Moran*, 296 F.3d at 648). The use of such an objective standard renders irrelevant "whether a judge is actually biased or actually knows of a ground requiring recusal." *Id.* Yet, it is "not enough for [Plaintiffs] to throw out [such] charges and then maintain that they cast a pall over the proceedings [simply] because they are 'not inconceivable.'" *Scott*, 234 Fed.Appx. at 355. That is, "judges should not recuse themselves solely because a party *claims* an appearance of partiality." *In re Aguinda*, 241 F.3d 194, 201 (2d Cir.2001) (emphasis added); *see also In re Mason*, 916 F.2d 384, 386 (7th Cir.1990) (inquiry under Section 455(a) is not made from perspective of "a hypersensitive or unduly suspicious person").

■■■■ Plaintiffs' argument for recusal under Section 455(a) largely parrots their argument under Section 455(b). They contend that a reasonable person could question my impartiality because my son is a Fredrikson shareholder and "a ruling against Medtronic could adversely affect Fredrikson (whether financially or by reputation or by its ability to obtain new

business from Medtronic)." (Pl. Mem. at 13.) For the reasons set forth above, the Court rejects that argument, as Plaintiffs offer nothing more than "the gossamer strands of speculation and surmise" to support it. *In re United States*, 158 F.3d 26, 35 (1st Cir.1998). An "average" person, knowing all of the facts and circumstances, would not conclude that my presiding over this case would have any impact on Medtronic's relationship with Fredrikson.

■■■■ As with Section 455(b), the Court is not painting on a blank palette in reaching this conclusion—legions of cases have come to the same result. For example, in *In re Billedeaux*, 972 F.2d 104 (5th Cir. 1992), the plaintiff sought recusal of the district judge because her husband was a partner at a law firm that represented the defendant (Tidex) in other matters. The district judge denied the motion, and the plaintiff then petitioned the Fifth Circuit for a writ of mandamus compelling the district judge to recuse. The appellate court's rejection of that petition is particularly apt here:

> There is no assertion that [the district judge] ever represented Tidex; nor is there an averment that her husband has handled matters for that client. The claim, instead, is that her husband is a partner in a firm that has represented Tidex on various occasions and that, as a result of that relationship, she and her husband benefit from fees from that client and that, accordingly, her impartiality might reasonably be questioned.

A similar argument was made in *Chitimacha Tribe* [*of La. v. Harry L. Laws Co.*, 690 F.2d 1157 (5th Cir.1982) ]: The Plaintiffs asserted that the judge was receiving payments from his former firm, which at all times still represented the defendant and thus might suffer financially if the judge were to rule adversely to the defendant. We held that "[a]t best, this speculation is remote and

unrealistic and does not justify disqualification." *Id.* at 1167.

Here, as well, there is no reason to conclude or speculate that any action [the district judge] might take in the case *sub judice* would affect [her husband's law firm] or [her] husband. A "remote, contingent, or speculative" interest is not one "which reasonably brings into question a judge's partiality." Thus, any interest of [the district judge] is too remote and speculative to support or suggest recusal.

972 F.2d at 105–06 (citations omitted). Similarly, in *Microsoft*, Chief Justice Rehnquist stated that he did "not believe that a well-informed individual would conclude that an appearance of impropriety exists simply because [his] son represents, in another case, a party that is also a party to litigation pending in this Court." 530 U.S. at 1302, 121 S.Ct. 25; *see also In re Digital Music Antitrust Litig.*, 2007 WL 632762, at *12 ("Courts have uniformly rejected the argument that an appearance of impropriety exists in the following situation: (i) a judge's spouse is a partner in a law firm that represents a litigant in matters other than the case before the judge;

and (ii) the spouse did not perform any work at the law firm for the litigant or worked for the litigant or unrelated matters."); *Canino*, 1998 WL 7219, at *3 ("Even if Judge Cederbaum had known that her husband's law firm represented the Defendant in an unrelated matter, § 455(a) would not have compelled her disqualification from this litigation."); *Diversifoods*, 595 F.Supp. at 134, 139–40 (no appearance of impropriety where judge's husband was partner of law firm that "presently represents the defendant in other matters, and, prior to the filing of this lawsuit, had some connection with the events underlying this litigation").[7] As the Seventh Circuit has noted, the care with which the recusal rules were crafted should lead any judge to "hesitate to treat the general language of § 455(a) as a bar to judicial service whenever a relative has 'something to do with' a party." *In re Nat'l Union Fire Ins. Co. of Pittsburgh*, 839 F.2d 1226, 1229 (7th Cir.1988). That is all that is present here, given the highly tenuous connection between me, my son, and Medtronic.[8]

 Plaintiffs also argue that my comments in response to inquiries from sever-

---

7. That the judge's husband in *Diversifoods* had "some connection with the events underlying" that litigation is noteworthy. Here, Plaintiffs assert that "[c]ertain former Medtronic employees, now Fredrikson shareholders, worked on regulatory and compliance matters including aspects of the PreMarket Approval or exemption from approval, of the very product or root devices in question." (Pl. Mem. at 13.) In support, they rely on a 2000 letter between a Fredrikson shareholder (Robert Klepinski), who was then employed by Medtronic, and the FDA regarding "temporary pacemaker electrodes that include myocardial needles used during open chest surgery." (Gustafson Aff. Ex. D.) But there is no obvious connection between such devices and the Sprint Fidelis leads, which are wires permanently affixed to implantable cardiac defibrillators (*see* MCC (Doc. No. 129) ¶¶ 2–3), nor do Plaintiffs point to any. Moreover, Fredrikson specifically avers that it "has nev-

er represented Medtronic in any regulatory matter concerning Fidelis leads and played no role in advising Medtronic during the design, development, testing, premarket approval, or post-market surveillance of Fidelis leads." (Koneck Aff. ¶ 8.) In any event, *Diversifoods* makes clear that recusal would not be required even if this nine-year-old letter indicated some minor connection between Klepinski and the facts underlying this litigation.

8. Plaintiffs' reliance on *United States v. Miell*, No. 07–CR–101, 2008 WL 974843 (N.D.Iowa Apr. 8, 2008), is misplaced. There, the defendant was indicted for scheming to defraud several insurance companies. One such insurer sued the defendant to recover its losses and was represented in that litigation by the judge's husband's law firm. *See id.* at *1. Because of the close connection between the criminal and civil cases, the judge recused

al reporters would lead a reasonable person to "question the Court's impartiality." (Pl. Mem. at 19.) Plaintiffs are referring to comments made shortly after I was informed by Plaintiffs' lead counsel, in a conference call, that Plaintiffs intended to move for my recusal.[9] In those comments, I noted that I was then unaware of any relationship between Medtronic and Fredrikson and that, because my son practices in the area of criminal defense, I did not then perceive any basis to disqualify myself. (*See id.* at 18–19.) I fail to see how those comments in any way suggested that I had "predetermin[ed] . . . the outcome of the [instant] motion," as Plaintiffs argue. (*Id.* at 19.) Rather, they simply and accurately reflected the state of affairs as they existed at the time I was asked to comment. Only under a strained interpretation can they be read to imply that I would not recuse myself under any circumstances or would ignore the facts Plaintiffs intended to present to me. *See, e.g., Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union,* 332 F.Supp.2d 667, 675 (S.D.N.Y.2004). An average person fully informed of the facts would not perceive bias based on these comments.

*In re Boston's Children First,* 244 F.3d 164 (1st Cir.2001), upon which Plaintiffs rely, is readily distinguishable. There, the

district judge wrote a letter to a newspaper and later spoke with a reporter, in both instances defending her decision to defer ruling on a motion for class certification. *Id.* at 166–67. Under those "highly idiosyncratic" circumstances, the First Circuit concluded that the district judge should have recused herself. Here, by contrast, my comments did not address, let alone defend, any prior decision in this case. Nor were my comments reasonably susceptible to the interpretation that I had pre-judged the instant Motion.[10]

Plaintiffs have failed to show that recusal under Section 455(a) is warranted.

## III. Additional considerations

The analysis set forth above fully disposes of Plaintiffs' Motion. Nevertheless, the Court pauses to address several additional matters, although it need not (and does not) rely on any of them in reaching its decision.

First, the Court believes that the timing of Plaintiffs' Motion speaks volumes. Plaintiffs claim they learned of the purportedly "extensive" relationship between Fredrikson and Medtronic only a few weeks ago, but their evidence of that relationship consists almost entirely of articles posted on Fredrikson's website, many of which are several years old. For instance, Plaintiffs cite a June 16, 2005, press release touting the firm's hiring of Klepinski

---

"out of an abundance of caution." *Id.* at *3. The facts here are markedly different.

9. Notably, the Court was contacted by a reporter for the *Wall Street Journal* within hours of that conference call, even though no transcript or other public record of that call had yet been filed. These facts call to mind the concerns raised in *In re Drexel Burnham Lambert,* 861 F.2d at 1309, that litigants with access to the media can manipulate the press in an attempt to obtain a judge more to their liking.

10. After the First Circuit decided *In re Boston's Children First,* the district judge asked

the court to rehear the matter *en banc.* Although that request was denied, half of the active judges of the Circuit expressed the view that "the district court's statement to the reporter . . . d[id] not create an appearance of partiality such as to require mandatory recusal under 28 U.S.C. § 455(a)." 244 F.3d at 171. Those judges were "particularly concerned that section 455(a) not be read to create a threshold for recusal so low as to make any out-of-court response to a reporter's question the basis for a motion to recuse." *Id.*

(*see* Pl. Mem. at 5 n. 1 (citing http://www.fredlaw.com/news/press/pr050616.html (last visited March 9, 2009))); the July/August 2006 issue of *Corporate Board Member* magazine, which lists Medtronic as a "representative" client of the firm (*see* Pl. Mem. at 5 n. 2 (citing http://www.fredlaw.com/firm/CBM2006.pdf (last visited March 9, 2009))); and a June 1, 2007, article in the *Minneapolis St. Paul Business Journal* discussing the firm's hiring of a former Medtronic attorney (*see* Pl. Mem. at 6 n. 3 (citing http://www.fredlaw.com/news/24113(eprint).pdf (last visited March 9, 2009))). Plaintiffs also cite various other internet sources that appear to have existed far longer than two weeks. (*See, e.g.,* Pl. Mem. at 10 n. 22 (citing http://www.bizjournals.com/twincities/stories/2008/09/01/daily5.html (last visited March 9, 2009)).)

■ The Eighth Circuit has repeatedly held that "[m]otions for recusal under 28 U.S.C. § 455 will not be considered unless timely made." *Tri–State Fin., LLC v. Lovald,* 525 F.3d 649, 653 (8th Cir.2008) (internal quotation marks and citation omitted); *accord Fletcher,* 323 F.3d at 664; *United States v. Bauer,* 19 F.3d 409, 414 (8th Cir.1994). "Timeliness requires a party to raise a claim 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' " *Fletcher,* 323 F.3d at 664 (citation omitted). Plaintiffs seeking recusal cannot claim ignorance of key facts easily discoverable—they are "charged with knowledge of all facts known or knowable, if true, with due diligence, from the public record or otherwise." *In re*

*Digital Music,* 2007 WL 632762, at *9; *accord In re Kan. Pub. Employees,* 85 F.3d at 1363 n. 8 (rejecting belated suggestion of partiality based on information "easily accessible" from *Almanac of the Federal Judiciary* ); *United States v. Daley,* 564 F.2d 645, 651 (2d Cir.1977) (recusal motion untimely where predicate facts were "a matter of public record [and] were at all times ascertainable by counsel"); *Huff v. Standard Life Ins. Co.,* 643 F.Supp. 705, 708 (S.D.Fla.1986) (where basis for motion is "known, or knowable, with due diligence from public records or otherwise," delay in filing motion is basis for denial). The age of the sources relied on here belies Plaintiffs' assertion that they lacked awareness of the connections between Fredrikson and Medtronic. Indeed, Plaintiffs themselves describe the connection between the firm and Medtronic as "highly promoted" and "long standing." (Pl. Mem. at 10.)

■ Moreover, there is not now, nor has there ever been, any secret that my son is a shareholder at Fredrikson. Notably, Plaintiffs claim only that they were unaware of Fredrikson's connection to Medtronic, not that they were unaware of my son's position at the firm. Of course, Plaintiffs could not have made that assertion—I am informed that my son has known Plaintiffs' lead counsel, Dan Gustafson, for many years, and he is well aware of my son's position with the firm.[11] Given that knowledge, Plaintiffs could have—and in the Court's view, should have—investigated the extent of the purported "close, continuing" relationship between the firm and Medtronic long ago. (*Id.* at 10.)[12]

---

11. A judge may rely on "facts drawn from his own personal knowledge" when ruling on a recusal motion under 28 U.S.C. § 455. *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir.1985).

12. Plaintiffs claim they had no obligation to conduct such an investigation, citing *Ameri-*

*can Textile Manufacturers Institute, Inc. v. The Limited, Inc.,* 190 F.3d 729, 742 (6th Cir.1999), for the proposition that litigants are not required to "pore through the judge's private affairs" to discover a potential conflict. (*See* Pl. Mem. at 21.) But the facts Plaintiffs allege to have recently discovered

 Instead, the timing of Plaintiffs' Motion—coming not long after the Court issued a major ruling adverse to Plaintiffs—suggests, to be charitable, that it is an exercise in judge shopping. The Eighth Circuit has expressed its disapproval of litigants who wait to seek recusal until after a judge has "issued an unfavorable ruling." *Neal v. Wilson*, 112 F.3d 351, 357 n. 6 (8th Cir.1997). Counsel may not "lie in wait, raising the recusal issue only after learning the court's ruling on the merits." *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir.1986). A judge faced with a recusal motion, therefore, must "be alert to avoid the possibility that those who ... question his impartiality are in fact seeking to avoid the consequences of his ... adverse decision." *In re Kan. Pub. Employees*, 85 F.3d at 1358–59 (citation omitted). That would appear to be the case here.

The Court is also keenly aware of the prudential considerations militating against Plaintiffs' Motion. Accepting Plaintiffs' logic would require judges to run conflict checks through the law firms employing their children, spouses, parents, aunts and uncles, and other family members within the circle of consanguinity set forth in Section 455. Difficult questions would need to be asked if a party to a proceeding before the judge appeared on such a conflict check: is this a substantial client? Is it likely the client will retain the firm in the future? How is the family member's compensation structured, and is it likely to be affected by this client's business? Such a system would be wholly unworkable, as well as a massive drag on the pace of litigation. Such a concern is not merely illusory—indeed, the spouses, children, and other family members of many of the judges of this Court work for law firms in the Twin Cities.

Furthermore, accepting Plaintiffs' argument would push the Court down a slippery slope that could require recusal in many situations well beyond the carefully crafted parameters of Section 455. Should the Court recuse, for example, in any case involving a major medical-device manufacturer, such as St. Jude or Boston Scientific? After all, rulings for (or against) a key player in an industry can affect the fortunes of others in the same industry, such as Medtronic in this hypothetical. Or perhaps the Court should recuse from all cases involving lawyers who are friends with my son, for conceivably (by Plaintiffs' logic) ruling adverse to such a lawyer could impair that friendship. Indeed, it is not difficult for the creative—or, perhaps more accurately (and bluntly), litigation-savvy—mind to conjure up a plethora of parades of horribles that could require recusal based on only the thinnest reed of logic. Adopting that logic would cripple the bench and eviscerate the Court's ability to perform its key function: the administration of justice.

---

have nothing to do with my "private affairs"—they concern only the links between Fredrikson and Medtronic. And given Plaintiffs' lead counsel's long-standing knowledge that my son is a shareholder at Fredrikson, the Court does not believe it was appropriate for Plaintiffs to sit idly by while the Court (and the parties) invested substantial time, effort, and expense in this case for the past year only to then move for my recusal. *See In re Nat'l Union*, 839 F.2d at 1232 (noting "the

substantial costs to the administration of justice ... caused by delay in pursuing" recusal); *In re Mercedes–Benz Antitrust Litig.*, 226 F.Supp.2d 552, 557 (D.N.J.2002) (given court's "substantial investment of time" in case, "[f]airness to the litigation process and to the parties weigh[ed] against recusal"; "This is no time for the Court to abandon its post through an excessively nice sense of the proprieties.").

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiffs' Motion for Recusal (Doc. No. 245) is **DENIED.**